In re FERGUSON.

(District Court, E. D. Pennsylvania. January 29, 1904.)

No. 1,678.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—INDEBTEDNESS OF BANKRUPT.
   Evidence examined, and *held* to establish the debt of an alleged bankrupt to the petitioning creditor as claimed.

In Bankruptcy. On exceptions to report of special referee finding that the alleged bankrupt was indebted to the petitioning creditor at the time of filing the petition, and the amount of such indebtedness.

The following is the report of Byerly Hart, Esq., special referee, under order of reference of December 21, 1903:

A petition in involuntary bankruptcy was filed. Ferguson demanded a jury trial as to the matter of his insolvency, and reference was made, under a denial of debt to the petitioning creditor. The special referee to whom the said matter was referred, with instructions to take testimony and report whether, at the time of "the filing of the petition for adjudication, the alleged bankrupt was indebted to the Philadelphia Brewing Company, the petitioning creditor, and, if so, in what amount," respectfully begs leave to report that, due notice having been given to the persons concerned, a hearing was had on Tuesday, January 12, 1904, and on subsequent days, at which hearing Mr. Thomas Leaming and Mr. W. W. Montgomery appeared for the Philadelphia Brewing Company, and Mr. Samuel Clement, Jr., and Mr. Clinton O. Mayer for Samuel J. Ferguson.

The special referee finds the facts to be as follows:

Samuel J. Ferguson, the alleged bankrupt, purchased on or about July 1, 1893, a saloon at 2754 Kensington avenue. The price was $9,000, to which sum Ferguson contributed $3,250, and the Philadelphia Brewing Company $1,750, and for this sum ($1,750) Ferguson gave his judgment promissory note. The remaining $4,000 was to be paid on July 1, 1894. When that day arrived Ferguson was unable to pay the amount, and the Philadelphia Brewing Company paid the sum, and took Ferguson's judgment promissory note therefor, dated July 2, 1894. Ferguson was, therefor, on July 2, 1894, indebted to the Philadelphia Brewing Company, for money loaned, $5,750. He was further indebted to the company for beer and so forth supplied by it.

The brewing company, as occasion required, advanced to Ferguson the money necessary to pay for his retail liquor license, being $1,000 in each of the years 1894, 1895, 1896, and 1897, and $1,100 for each of the years 1898, 1899, 1900, and 1901, in all $8,400, and for the sums so advanced Ferguson gave his several judgment promissory notes.

On May 2, 1900, Ferguson saw Boyle, president of the brewing company, and paid him $500, at the same time signing a judgment promissory note for $1,100, dated May 2, 1900. For the sum paid ($500), John McGeehan, the cashier, refused to give a receipt, and several weeks after May 2, 1900, Ferguson saw Boyle and complained of McGeehan's neglect. Ferguson says that thereupon Boyle asked for all the receipts for money paid which he had, and

that he gave to Boyle 260 receipts, for $50 each, which several sums he had paid McGeehan on account of his (Ferguson's) indebtedness for money loaned by the brewery. These receipts, Ferguson says, were never again in his possession.

It appears, therefore, that this delivery of receipts to Boyle took place some time late in May, 1900, or early in June, 1900, and that at that time, if Ferguson is to be believed, Boyle, with his suspicions aroused, was in a position to satisfy himself whether or not McGeehan had received from Ferguson $13,-000 for which he had given him no credit on the books. It is a fact that credit was not given on the books.

In March, 1901, about 10 months after the occurrence regarding the $500, John McGeehan, the cashier to whom Ferguson says he paid $13,000, was discharged, and he was afterwards indicted for embezzlement of the funds of the brewery.

Following upon the discovery of McGeehan's defalcation, the officers of the brewery collected from the several customers their beerbooks, passbooks, and receipts with a view to determining the state of their accounts, it having been found that McGeehan's books, for the period from some time in 1896 to the time of his discharge, March, 1901, were inexact. Up to January 1, 1896, and after March, 1901, the books are correct. Expert accountants were employed for some months upon the books. Ferguson, after McGeehan's discharge, handed in his books and receipts, giving them himself to Boyle in person, who was already, as Ferguson says, in possession of the 260 receipts for moneys paid to McGeehan.

The result of the examination by the expert accountants of Ferguson's account was tabulated in a statement, which was dated November 12, 1901, and which was given somewhere about the time of date to Ferguson by John McGlinn, who had succeeded, as president, Boyle, who died August 7, 1901. Ferguson says that at the time he told McGlinn that the statement was not correct, and that he would get justice. McGlinn testifies that at the time Ferguson said, "I owe a great deal of money to the brewery," that he (McGlinn) proposed that Ferguson should give one note for the several notes held, and that Ferguson said he would take the statement and examine it, and return it in a day or two. Ferguson did not return.

Prior to Thanksgiving Day (November, 1901) John F. O'Rourke, the collector of the brewing company, as he testifies, saw Ferguson at his saloon, 3000 Kensington avenue, and asked payment on account of the amount due for beer, as shown by the statement of November 12, 1901. At that time O'Rourke testifies that Ferguson said: "It [the statement] is all right, with this exception: Mr. Boyle promised to make me an allowance on account of my selling beer in large glasses." When asked the time at which Mr. Boyle had made the promise, Ferguson said: "At the time that the price of beer was increased to $6.50 on account of the war tax." And O'Rourke says that Ferguson excused himself from payment at the time because he needed to stock up for Thanksgiving Day, and must pay cash. Ferguson promised to go to the brewery on the next Monday or Tuesday, and pay "three of four weeks' beer bill." On December 2, 1901, he did pay the sum of $126.75. Ferguson testifies that this meeting took place Christmas eve of 1901, and that he said at the time to O'Rourke, "I won't pay a cent until I have a final settlement and get what belongs to me," and that he did not admit that the account was right.

In the summer of 1899 Ferguson attempted to transfer his license. The interests of the brewing company were in charge of Harry A. Mackey, of the Philadelphia bar, and at that time Mr. Boyle, the president, said to Mr. Mackey, in Ferguson's presence, that he (Ferguson) owed the company a large sum of money ($16,000 to $18,000), and that the transfer was desired in order to pay the debt. Ferguson did not deny or qualify the assertion made by Boyle, and at the same interview he said "he wanted to get away from that place, that he couldn't do any business, and that he never could pull out of the hole unless he got this transfer." Ferguson denies making the admissions testified to by Mr. Mackey.

From May 22, 1899, the first receipt being August 16, 1899, Ferguson took the receipts for money paid him for beer, not in the ordinary way in the beerbook, but in a special passbook. He required this because if the beerbook

was used the bartenders would know how his account for beer stood, and he said to John F. O'Rourke, "It is none of their business how much I owe the brewery, and how much I don't." "I am pretty well behind, you know that, and there is no use in publishing it."

In November, 1900, James A. Clabby, collector for the brewing company, saw Ferguson with a view to collecting a bill due the company. Clabby testifies that at that interview Ferguson said that he had an offer of $10,500 for his saloon, and asked him (Clabby) "whether Mr. Boyle would be satisfied to accept that amount of money as part payment on the bill that he owed the brewing company."

Between the 1st and 15th of April, 1901, Clabby again saw Ferguson, with the intent to get his books and receipts for examination, and at that time Ferguson said that he had receipts for every dollar he had paid excepting one, and that that was for $500 paid to Mr. Boyle in 1900.

The beer sold to Ferguson was at the rate of $6 and $6.50 per bbl. During and after the period of the "war tax" the price was $6.50, i. e., after June 14, 1898. Before June 14, 1898, the price was $6 per bbl. It was stipulated by counsel that the whole amount of beer supplied to Ferguson should be taken as 3,310½ barrels for the period January 1, 1896, to January 9, 1902. Of all this beer delivered after June 14, 1898, 1,783½ bbls. is to be charged at $6.50, making $11,592.75, and all beer before that time is to be charged at $6, 1,527 bbls., making $9,162. In 1893 and 1894 Ferguson paid for beer $6 per barrel and no more. After that time it appears that sometimes he paid $8, the excess being credited to his beer account, and not his loan account. Ferguson says that he was to pay $8 a barrel, of which $2 was to be credited on account of the money borrowed, and that this arrangement included 1893 and 1894.

A man named Matthew Kilroy, on January 10, 1896, bought a saloon from a man named William Taggart, who gave in payment his ordinary promissory note for $4,000, secured by a judgment promissory note in like amount. These notes were indorsed by Taggart to the Philadelphia Brewing Company. Ferguson asserts that Taggart, who is dead, by will left all his property to him (Ferguson), including the said notes for $4,000, and that he should have credit in his accounts for $4,000 by reason of said notes. The notes were never paid and are worthless.

Upon May 27, 1901, Ferguson made an agreement as follows:

"[Copy.]                    Philadelphia, May 27th, 1901.

"This is to certify that I, Samuel J. Ferguson, do hereby agree to pay to the Philadelphia Brewing Company, the market price for all beer, ale and porter purchased from them, and in addition thereto the sum of twenty-five dollars ($25.00) per week, which is to be applied towards the liquidation of my present indebtedness to them. The above agreement to go into effect from this date.

"[Signed]                      Samuel J. Ferguson."

As of December term, 1901, No. 2,142, common pleas court No. 1, the Philadelphia Brewing Company against Samuel J. Ferguson, the said judgment notes were filed and judgment taken. A rule was granted to show cause why the judgment should not be opened and the defendant led into a defense. This rule has not been finally disposed of. William Boyle, formerly president of the Philadelphia Brewing Company, is dead. William Taggart, the indorser of the promissory note for $4,000, is dead. John McGeehan, the defaulting cashier of the brewing company, is not to be found.

Ferguson testifies that he did not at any time mention to anybody but Boyle and McGeehan the existence of the 260 receipts, for $50 each. He did not so mention to McGlinn or to others their existence when receiving the statement of November 12, 1901.

Upon the foregoing findings of fact the special referee begs leave to report his findings as to whether or not the alleged bankrupt is indebted to the petitioning creditor and in what amount. There is no dispute as to the consideration moving from the Philadelphia Brewing Company; the contention arises under Ferguson's averment as to the payments made by him. The brewing company loaned money to Ferguson to the amount of $14,150, as evidenced

by judgment promissory notes given by him. It concedes the payment of $500 on account of these notes, and its claim is in part for $13,650 money loaned. No question arises as to the amount of beer supplied; it was stipulated by counsel that the quantity was 3,310½ barrels. A question has been made as to what was to be the price of the beer. Some was at $6 per barrel and some at $6.50 per barrel, and the referee has found as a fact that of the 3,310½ barrels 1,783½ barrels should be charged at $6.50 per barrel and 1,527 barrels at $6. The change of price was made in June, 1898, to meet the "war tax," and it was testified that the change applied to all customers. The referee sees no reason to suppose that Ferguson's case was an exception, and the agreement of April 16, 1901, does not justify the inference that up to that time the price was to be only $6.

The consideration moving from the brewing company is therefore as follows:

| | | |
|---|---:|---:|
| Money advanced | | $13,650 00 |
| Mdse. supplied from Jan. 1, 1896: | | |
| 1,783½ bbls., @ $6.50 | $11,592 75 | |
| 1,527 " " $6.00 | 9,162 00 | 20,754 75 |
| Total | | $34,404 75 |

Ferguson asserts that he made payment in manner following: He paid, he says, to John McGeehan, cashier of the Philadelphia Brewing Company, a sum of $50 per week during 260 weeks of a period of a time beginning July 1, 1893, and ending March, 1901, being seven years and eight or nine months. These payments amount to $13,000. He says that he paid upon all beer bought by him $2 in excess of the real price, $6, which excess he says was to be credited him on account of the money borrowed. He says that he is entitled to credit in the sum of $4,000, the amount of a note of Matthew Kilroy indorsed by William Taggart to the Philadelphia Brewing Company. He further says that he paid for all beer received by him at $6 per barrel, and that he owes nothing on that account.

The contention of Ferguson, if true, proves too much. It shows payment to the company of much more than he owed.

| | | |
|---|---:|---:|
| As shown before, he owed | | $34,404 75 |
| From which take the value of 3,310½ bbls., @ $6.00 and $6.50 | | 20,754 75 |
| Amount due for money loaned | | $13,650 00 |
| Ferguson says that to liquidate this indebtedness he paid— | | |
| McGeehan $50 on 260 times | | $13,000 00 |
| $2.00 per bbl. on 2,980 bbls. of beer | $5,960 00 | |
| $1.50 " " " 330½ " " " | 495 75 | 6,455 75 |
| | | $19,455 75 |

And in addition $2 per bbl. on all beer received before January 1, 1896.

And the court is asked to believe that, in order to pay an indebtedness of $13,650, Ferguson paid in cash the sum of more than $19,455.75. And this overpayment of $5,805.75 is said to have been made by a man whose business was so unprosperous that he contemplated a transfer of his license to improve his condition.

The a priori untrustworthiness of Ferguson's story is shown by more than one consideration. In July, 1893, he was indebted to the brewery company in the sum of $1,750, contributed to the price of his saloon. On July 1, 1894, he again borrowed $4,000 from it, making his indebtedness $5,750 as of July 1, 1894. He testified that from July 1, 1893, to March 27, 1901, he made 260 payments, of $50 each, on account of his indebtedness to the brewery, so that it appears from his own testimony that during the interval of time named (leaving out of consideration the asserted payment of $2 extra per barrel) his indebtedness increased from $5,750 to $13,000. He asks the court to believe that he was able to pay $50 a week for 260 weeks out of the proceeds of a business so bad that his indebtedness in the time named increased by $7,250. It appears that from January 1, 1896, to January 9, 1902, a period

of six years, Ferguson sold only 3,310½ bbls.—say 550 bbls. a year. This is not a volume of business to indicate ability to pay $50 per week, even considering that Ferguson sold strong liquor as well.

Moreover, if Ferguson was paying $2,500 a year in cash on account of his indebtedness, why did he not ask the return of his judgment notes? Especially in 1893, why did not his payment lead to the canceling of the note for $1,750 instead of to the giving of another note for $4,000? According to Ferguson's story, he had by March, 1901, paid not only the full amount represented by the notes, but thousands of dollars in excess, yet he did not ask the return of the notes, but agreed to wipe out the past and sacrifice the overpayments. And he then made a new agreement, obligating himself to pay $6.50, and $25 a week upon his indebtedness.

Four witnesses, John McGlinn, John F. O'Rourke, Harry A. Mackey, and James A. Clabby, testified to Ferguson's having made admissions of his indebtedness. Ferguson denied making the admissions, but the referee thinks that the four witnesses are to be believed, and not Ferguson. If Ferguson's story is true that he paid $50 a week, and $2 excess upon every barrel of beer bought, he must after July 1, 1896, if not before, have always been in the position of having paid more than he owed; yet he allows the overpayment to increase; and each year, at a time when he is entitled to a credit for overpayments, he signs a judgment promissory note for $1,000 or for $1,100, in order to pay for his license. The referee does not believe that such could be the condition of affairs, and that it should continue.

That Ferguson is at least careless in giving his testimony is shown by his testimony that he paid $8 per barrel, $2 of which was to be credited on his loan account. Mr. O'Rourke, the collector, testifies that in 1893 and in 1894 Ferguson paid only $6 per barrel, and the books show the fact. It may be that Ferguson did not mean to say that he actually paid $8 during 1893 and 1894; but on pages 9 and 10 of his testimony he says that he paid $8 for all beer received up to May 27, 1901, a statement which includes 1893 and 1894, in which year it is clear he did not pay $8. He testifies positively as to paying $8 per barrel from January 1. 1896, to January 2, 1902.

As regards the note of Matthew Kilroy, Ferguson testifies with much positiveness that the assignment of the note to the Philadelphia Brewing Company was not upon the note when it was given to the company. It is clear from Judge Elcock's testimony that the fact is otherwise. As regards the 260 receipts, for $50 each, Ferguson says that he gave them to Boyle, the president. As found by the referee, this was late in May or early in June, 1900.

Mr. McGlinn testifies that six, seven, or eight months before McGeehan was discharged, which was in March, 1901, Boyle's suspicions were aroused as to McGeehan. With his suspicions awake, Boyle, the president, was in possession of 260 receipts, for $50 each, said to have been paid to the man suspected, and was in a position to confirm his suspicions beyond all doubt, yet he did nothing until long after—more than half a year. The referee finds it impossible to believe that Boyle would have delayed if he had had the receipts. And further suspicion is cast upon this story as to the receipts by the fact that Ferguson never mentioned to any one but Boyle and McGeehan the existence of the receipts.

The loss of the receipts has not been explained. There could have been only two motives on Boyle's part for their destruction—one the desire to shield McGeehan, and the other the desire to rob Ferguson in the interest of the brewery. As to the first, Boyle, far from wishing to shield McGeehan, had him discharged and arrested; and as to the second it is not plausible.

If, as Ferguson contends, he paid 260 sums, of $50 each, weekly, and that McGeehan stole it all, when he (McGeehan) was taking these specific sums of money continuously, not at intervals, during a period of nearly eight years, yet in these eight years Ferguson was seeing Boyle every week, and nothing developed as to McGeehan's peculation. The referee is forced to disbelieve Ferguson's testimony.

It is contended in Ferguson's favor that the admitted confusion in the books for the time from some time in 1896 to March 27, 1901, and the defalcation of McGeehan, make it impossible to prove the claim against Ferguson. The referee does not think so.

The element of the borrowed money is proved by the production of judgment promissory notes to the amount of $14,150, upon which a payment of $500 is admitted.

There is no dispute as to the amount of merchandise supplied, and but little as to the price; the question is upon the credits to be allowed Ferguson. Because there was some confusion in the books, and because McGeehan defaulted, it does not follow that Ferguson was not credited with all he paid. There is no evidence, outside of Ferguson's assertion as to the 260 receipts, as to the method McGeehan used in his stealing. Ferguson produced his books and receipts so that his account might be stated, and Oscar Slinock, the expert accountant, testifies that the receipts and the books nearly tallied, and that the difference was in four or five items of credit for cash paid which were in the books, and for which Slinock gave Ferguson credit, although he produced no receipts therefor. Ferguson's claim to allowance of $4,000 because of the Matthew Kilroy note requires no consideration. The note has not been paid, and is worthless.

The referee finds that at the time of the adjudication the alleged bankrupt, Samuel J. Ferguson, was indebted to the Philadelphia Brewing Company in the sum of $18,764.75, upon an account to be stated thus:

| | | |
|---|---|---|
| Money loaned to Ferguson as evidenced by judgment promissory notes | | $14,150 00 |
| Merchandise sold Ferguson: | | |
| 1,783½ bbls. of beer, @ $6.50 | $11,592 75 | |
| 1,527 " " " " $6.00 | 9,162 00 | 20,754 75 |
| | | $34,904 75 |
| Upon which Ferguson made payments: | | |
| On account of the judgment notes | $ 2,779 50 | |
| On account of the beer | 13,360 50 | 16,140 00 |
| Balance due by Ferguson | | $18,764 75 |

To meet the case of the view of the whole matter as taken by the special referee not being sustained, he further finds that in any event Ferguson was indebted to the Philadelphia Brewing Company at the time of the adjudication.

Ferguson contends that when he made the agreement of May 27, 1901, that wiped out the past, and a new start was made as evidenced by the agreement, and that at that time Boyle said, "The past was to end." But, without admitting this contention, Ferguson is indebted to the Philadelphia Brewing Company, and the special referee so finds, by reason of his dealings for the period from March 27, 1901, to January 9, 1902, in the sum of $1,642.25, and this amount is admitted by Ferguson's counsel to be due by him, if the question of former overpayments by Ferguson is eliminated.

Thomas Leaming and W. W. Montgomery, for petitioning creditor.
Rothermel & Clement and Clinton O. Mayer, for alleged bankrupt.

J. B. McPHERSON, District Judge. I have read with attention the mass of testimony that was taken upon this reference, and have considered the arguments of counsel thereon, with the result that I entirely agree with the conclusions reached by the learned referee. His report is a complete vindication of these conclusions, and I cannot do better than adopt it as the opinion of the court.

For the reasons there stated the report is confirmed, and it is now found by the court as a fact that on July 10, 1903, the day when the petition in bankruptcy was filed, the bankrupt was indebted to the Philadelphia Brewing Company in the sum of $18,764.75. No report was made on the subject of interest, and apparently no claim is made by the petitioning creditor on this account.